# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY FLORES,<br><br>                       Plaintiff,<br><br>v.<br><br>MARCOS ANDRADE, individually and in his official capacity; and the UNITED STATES OF AMERICA,<br><br>                       Defendant. | Case No.: 3:24-cv-01189-JES-MSB<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION TO DISMISS; and**<br><br>**(2) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE SECOND AMENDED COMPLAINT**<br><br>**[ECF No. 30]** |

Pending before the Court is the Defendant Border Patrol Agent Marcos Andrade's ("Agent Andrade" or "Andrade") Motion to Dismiss. ECF No. 30. Plaintiff Anthony Flores ("Plaintiff" or "Flores") filed an Opposition, and Defendant filed a Reply. ECF No. 31, ("Opp'n"); ECF No. 34. On September 24, 2025, the Court held a hearing on the Motion and took the matter under submission. ECF No. 35. After due consideration and for the reasons discussed below, the Court **GRANTS** Defendant's Motion without prejudice and **GRANTS** Plaintiff's Motion for Leave to Amend.

//

//

# I. BACKGROUND

## A. Factual Background

In his Second Amended Complaint ("SAC"), Flores alleges the following facts. On July 11, 2022, Flores was driving in the Calexico, California when Agent Andrade, a uniformed Customs and Border Protection Agent, abruptly shot him in broad daylight. SAC ¶ 1. Flores posed no danger to Agent Andrade or the public. *Id.* ¶ 3. Plaintiff was alone in a minivan, unarmed, in bumper-to-bumper traffic, and stopped and/or idling in the stopping traffic. *Id.* ¶¶ 19, 29, 20, 24. At the time giving rise to this claim, Flores was not committing any crimes or driving dangerously. *Id.* ¶ 21. Within seconds of Agent Andrade arrival at the scene, he fired his weapon and shot Flores. *Id.* ¶ 4. These events took place too quickly for Flores to react. *Id.*

During this event, Agent Andrade "was acting in his official capacity and under the color of law." *Id.* ¶ 17. Agent Andrade acted in the scope of his employment as a Border Patrol agent of the United States of America. *Id.* ¶ 69. There was no lawful basis for Agent Andrade to detain Flores or use deadly force. *Id.* ¶ 25. Agent Andrade lacked any specific, articulable suspicion of Flores, and had no reasonable basis to fear Mr. Flores posed a danger to anyone. *Id.* ¶¶ 27-28.

After exiting his vehicle, Andrade had a clear view of Flores' behavior. *Id.* ¶ 31. Andrade yelled "Stop, Stop," or words to that effect, and "immediately" opened fire upon Flores. *Id.* ¶ 39. Flores did not hear or process the abrupt commands before he was hit with a barrage of glass and bullets. *Id.* ¶ 41. Flores sustained injuries to his thumb and eye as well as pain and suffering. *Id.* ¶¶ 50-54.

## B. Procedural Background

Plaintiff filed the Complaint on July 11, 2024. ECF No. 1. The Court granted Plaintiff's Motion for Leave to Amend the Complaint, which was filed on November 13, 2024. ECF Nos. 5-7. The Court granted Plaintiff's Motion for Leave to Amend the First Amended Complaint. ECF No. 13-14. The SAC was filed on January 13, 2025. ECF No. 15. The Court granted the Parties' Joint Motion to Continue Deadline for Agent Andrade

to respond to the SAC on July 29, 2025. ECF Nos. 23, 29. Agent Andrade filed the instant Motion to Dismiss on August 26, 2025. ECF No. 30. Plaintiff filed his Response on September 10, 2025. ECF No. 31. Agent Andrade filed his Reply on September 16, 2025. ECF No. 34. A hearing took place on September 25, 2025, where the Court heard oral arguments on the motion. ECF No. 35.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

///

## III. DISCUSSION

Agent Andrade argues that Flores' claim against him should be dismissed because: (1) no *Bivens* remedy exists for such a claim; and (2) even if a *Bivens* remedy does exist, he is entitled to qualified immunity.

### A. *Bivens* –Fourth Amendment Excessive Force Claim

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, the Supreme Court recognized an implied cause of action for money damages against individual federal officers for violating the Fourth Amendment. 403 U.S. at 389, 397 (1971). Over the next decade, *Bivens* was expanded to permit suits for violations of the Due Process Clause of the Fifth Amendment and the Eight Amendment. *See Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a congressional staffer's Fifth Amendment claim for sex discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (permitting a federal prisoner's Eighth Amendment claim of inadequate medical care). In the years since, "expanding the *Bivens* remedy" has become "a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (internal quotation marks omitted). However, the Supreme Court has not "dispense[d] with *Bivens* altogether." *Egbert v. Boule*, 596 U.S. 482, 491 (2022).

When analyzing an alleged *Bivens* claim, courts engage in a two-step inquiry. *Id.* at 492. First, the court must determine whether the claim "presents a new *Bivens* context." *Id.* at 483. If the claim presents a "new context," the court must then determine whether "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 492 (internal quotation marks omitted).

//
//
//
//
//

### 1. New Context

The Supreme Court has held that a claim presents a new context when it is meaningfully different than previously decided *Bivens* cases. *Ziglar*, 582 U.S. at 139. The Court further instructed that:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; [or] the statutory or other legal mandate under which the officer was operating.

*Id.* at 139-40.

On two occasions, the Supreme Court has declined to extend *Bivens* where plaintiffs alleged excessive force claims against Border Patrol agents. *See Hernandez v. Mesa*, 589 U.S. 93 (2020); *Egbert*, 596 U.S. 482. In both cases, the Court found that defendants were "carrying out Border Patrol's mandate to interdict persons attempting to illegally enter or exit the United States or goods being illegally imported into or exported from the United States." *Egbert*, 596 U.S. at 494 (internal quotation and alteration marks omitted). Accordingly, it concluded that "regulating the conduct of agents at the border unquestionably has national security implications," and the "risk of undermining border security provides reason to hesitate before extending *Bivens* into this field." *Hernandez*, 589 U.S. at 108. The Court, therefore, held that "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert*, 596 U.S. at 486. Thus, excessive force claims based on the conduct of CPB agents, with a nexus to the agency's mission, are foreclosed by *Egbert. Id.*

Agent Andrade directs the Court to Flores' SAC, which alleges that during the events that give rise to Flores' claim, Andrade was a uniformed Customs and Border Protection agent acting within his official capacity and under the color of law. Mot. at 10; SAC ¶¶ 1, 17, 69. He argues that under these facts, and *Hernandez* and *Egbert*, the Court must find that this claim presents a "new context" under *Bivens*. ECF No. 30-1 ("Mot.") at 9-10.
//

Flores contends that his claim is not an extension of *Bivens*. He acknowledges that Agent Andrade was acting under color of law but argues that Andrade did not act in good faith and violated the Fourth Amendment by using unreasonable force against him, without probable cause to believe that he had committed a crime. SAC ¶¶ 59-60. In Flores' *opposition brief*, he argues that his claim is distinguishable from *Hernandez* and *Egbert* because "the defendant in this case was not enforcing immigration laws or border-related laws" when the encounter at issue occurred. Opp'n at 8:11-12. Flores further urges the Court to adopt the rationale of a District Court of Arizona decision, *Mattia v. U.S.A.*, Case No. CV-24-00252-TUC-RM, 2024 WL 4858427 (D. Ariz. Aug. 7, 2025); ECF No. 31-1. In *Mattia*, the court held that under *Bivens*, an excessive force claim against Border Patrol agents did not present a new context. Opp'n Ex. A at 13.

Flores' arguments fail for two reasons. First, Flores asks the Court to consider factual allegations which are not contained within the SAC. This request is improper. *Schneider*, 151 F3d at 1197 n. 1 ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original); *compare* Opp'n at 8:11-12 *with* SAC ¶¶ 1,17, 69.

Second, when analyzing solely the factual allegations contained within the SAC, Flores' claim is distinguishable from *Mattia*. This is because, there, "the Border Patrol agents at issue in this case were *assisting local law enforcement on a general criminal matter* rather than engaging in work with a nexus to immigration enforcement." Opp'n Ex. A at 13 (emphasis added). Here, any allegations that Agent Andrade's conduct lacked a nexus with the Border Patrol's mandate is conspicuously absent from the SAC. Consequently, *Hernandez* and *Egbert* controls Flores' claim. Thus, the Court finds that Flores' excessive force claim against Border Patrol agent Andrade does present a new context under *Bivens*.

//

//

## 2. Special Factors

The court now turns to whether this case involves any "special factors" that would preclude a *Bivens* remedy.

The Supreme Court has held that a special factor exists if "there is any rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 496 (internal quotation marks and emphasis omitted). When a court finds that a special factor exists, then it must dismiss the claim. *Id*.

Under Ninth Circuit law, this inquiry requires a court to ask "whether there is 'any alternative, existing process for protecting' the plaintiff['s] interests." *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012) (quoting *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1120 (9th Cir. 2009)). "If there is such an alternative remedy, [then the] inquiry stops." *Id.*; *see Egbert*, 596 U.S. at 493 ("[O]ur cases hold that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the executive to provide, 'an alternative remedial structure.'") (citations omitted).

The Supreme Court has made clear that an analysis of whether the existing remedies provide plaintiff with complete relief is not necessary. *Id*. ("So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy.").

Agent Andrade argues that alternative remedies exist that preclude a *Bivens* remedy. Mot. at 12. For example, aggrieved parties can report any alleged misconduct to the Inspector General of the Department of Homeland Security, who must either investigate or refer the matter to the Officer for Civil Rights and Civil Liberties. 8 C.F.R. §§ 287.10(a)-(b)); 6 U.S.C. § 345(a)(1), (4), (6) (requiring Officer for Civil Rights and Civil Liberties to investigate alleged misconduct); Mot. at 13. Also, under 18 U.S.C. § 242, the Department of Justice may prosecute federal agents who willfully deprive any person of a

Constitutional right while acting under color of law. *Hernandez v. Mesa*, 885 F.3d 811, 821 (5th Cir. 2018) (explaining threat of criminal prosecution is not hollow).

Plaintiff points to *Hernandez* and urges to the Court to look to analogous statutes for guidance on the appropriate boundaries of judge-made causes of action, such as 42 U.S.C. § 1983. *Hernandez*, 589 U.S. at 109; Opp'n at 10. Flores also relies on an overturned Fourth Circuit decision where that court reasoned that "[t]he officers' alleged conduct amounts to a clear-cut constitutional violation that would easily withstand a motion to dismiss in a § 1983 case" to extended *Bivens*. *Fields v. Fed. Bureau of Prisons*, 109 F.4th 264, 272-73 (4th Cir. 2024).

The Court finds that both contentions are unpersuasive. That is because when the Supreme Court reviewed *Fields*, it found that "[t]his case arises in a new context, and special factors counsel against recognizing an implied *Bivens* cause of action" because "an alternative remedial structure already exists for aggrieved federal prisoners." *Goldey v. Fields*, 606 U.S. 942, 944-45 (2025) (internal quotations omitted).

Accordingly, the Court finds that Congress has afforded plaintiffs, such as Flores, with alternative remedies for the claim he asserts against Andrade. Such remedies independently foreclose a plaintiff's *Bivens* action. *Egbert*, 596 U.S. at 484. Therefore, the Court must conclude that Flores has failed to allege sufficient factual allegations to state a *Bivens* claim upon which relief can be granted. *Id*.

**B. Qualified Immunity**

Due to the Court finding that Flores has failed to state a claim for relief against Andrade under *Bivens*, it need not consider whether Agent Andrade is entitled to qualified immunity.

**C. Leave to Amend**

During the hearing on the Motion, Plaintiff requested that in the event the Court grants Andrade's Motion, that it also grants him leave to amend to file a third amended complaint.

//

When a court dismisses a complaint under Federal Rule of Civil Procedure 12(b)(6), it must then decide whether to grant the plaintiff leave to amend. A district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, a district court has discretion to deny leave to amend when a proposed amendment would be futile. *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 725-26 (9th Cir. 2000). Dismissal without leave to amend is only appropriate when the court is satisfied that the deficiencies of the complaint could not possibly be cured by an amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). In other words, if allowing a party to amend its pleading would be futile, district courts properly decline to grant leave to amend. *Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (citing *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)).

The Court finds that it is possible to cure the defects in Flores' SAC. Thus, permitting him leave to amend would not be futile. *Foman v. Davis*, 371 U.S. 178, 182, (1962).

### IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion to Dismiss without prejudice and **GRANTS** Plaintiff's Motion for Leave to Amend. Plaintiff has **21 days** from the date of this Order to file a Third Amended Complaint to address the deficiencies noted above.

**IT IS SO ORDERED.**

Dated: October 6, 2025

Honorable James E. Simmons Jr.
United States District Judge